J-S30016-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COURTNEY PERRY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JASON PERRY | : | |
| | : | |
| Appellant | : | No. 1652 WDA 2019 |

Appeal from the Order Entered October 11, 2019
In the Court of Common Pleas of Butler County Domestic Relations at
No(s):  Docket Number: 35445,
PACSES #650113082

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:                FILED OCTOBER 07, 2020

Jason Perry appeals from the order finding him in contempt of court and sentencing him to six months' house arrest. He argues the trial court erred in finding that he had the ability to pay the court-ordered support, that he was in contempt for willfully violating the order to pay support, and that he had the present ability to pay a purge amount of $500. We affirm.

In July 2010, a New Jersey court ordered that Perry pay child support, effective May 2010. In 2013, the order was registered in Butler County, Pennsylvania. In June 2018, the court issued the most recent support order, which required Perry to pay $515.67 per month, plus $39.00 per month in arrears. There have been numerous petitions for contempt, and, in October 2019, Perry owed $52,610.48 in support. In August 2019, the Butler County

_____

[*] Former Justice specially assigned to the Superior Court.

Domestic Relations Section ("Domestic Relations") filed another Petition for Contempt. The court scheduled a hearing for September 12, 2019. After Perry did not appear, the court issued a bench warrant, and Perry was apprehended on the warrant.

In October 2019, the court held a hearing on the Petition. Domestic Relations explained that the Veterans Administration ("VA") had informed it that Perry had not been cooperating with its compensated work therapy program and had not taken advantage of its vocational support program. N.T., 10/11/19, at 3. Further, Perry had not responded to an enforcement letter sent by Domestic Relations.

Perry testified that he suffered "from multiple service connected conditions, both physical and neurological." Id. at 5. He has narcolepsy, chronic pain, and fatigue, which are related to Gulf War Syndrome. Id. He testified that he was working with the VA and had "beg[u]n to make some progress in establishing these issues and changing [his] financial terms and situation." Id. He had a follow-up doctor appointment in the beginning of October, but missed it, and he also missed an appointment to update his paperwork. Id. He said he has been working with the VA regarding his disability for eight years. Id. In the past, he had completed a physician verification form for Domestic Relations. Id. at 6.

Perry testified that he hoped his disability was not permanent, but that "it has been long lasting." Id. at 7. He had diagnostic discrepancies, and "hope[d] that at some point there would be appropriate treatment." Id. He

- 2 -

stated he is behind in his support payments because he is unable to work due to his disability. Id. He stated he would be able to provide a physician verification form after his appointment with his physician. Id. at 7-8. He testified that he did not complete the work therapy program, stating that he "had some days of illness," and that he was told by the person who oversaw the program that they would review his situation and "possibly assign" him to a new work assignment and refer him to vocational rehabilitation. Id. at 8.

On cross examination, Perry testified that he was asked to leave the VA's vocational support program and the compensated work therapy program. Id. at 12. Further, his claim for social security was denied, and he did not appeal the denial. Id. at 16. He testified he was working with the VA and planned on re-filing for social security benefits. Id.

The court found Perry in contempt. Id. at 17. It sentenced him to 180 days' incarceration, but allowed the sentence to be served on house arrest with electronic monitoring. Id. Perry was allowed to leave his residence only for documented medical appointments or to seek employment. Id. The court further ordered that Perry could pay $500 to purge the contempt. The court provided the following reasoning for its sentence:

> [The court has] afforded to [Perry] every opportunity to take appropriate legal action with the state of New Jersey which has eventually been dismissed. [It has] worked with [Perry] . . . in allowing [him] to proceed with Social Security . . . .
>
> [The] Social Security Administration has dismissed, and [Perry had] not filed a timely appeal. And [the court] attempted to work with [Perry] through the Veterans Administration to either receive appropriate treatment or to

participate in the work program, and [Perry has] been dismissed from their programs.

So the [c]ourt finds no alternative but a Sentence of Contempt since [Perry] failed to comply with any of th[e c]ourt's previous orders. Inasmuch as incarceration may not be completely appropriate, . . . [the court] allow[ed] . . . [h]ouse arrest so that [Perry could] again attempt to do the various conditions which would be necessary, which is to either provide documented medical forms that [he is] not capable of working, or to participate in any type of a program to seek gainful employment.

And a further condition is that [Perry] will be drug tested. [Perry is] only permitted to take drugs as prescribed by a licensed practitioner and – or medications as prescribed by a license practitioner. [Perry is] not permitted to consume alcohol while on House Arrest. And [Perry is] entitled to receive credit for time served from [his] date of arrest on this Bench Warrant until today.

Id. at 18-19.

Perry filed a timely notice of appeal. He raises the following issues:

A. Did the trial court err in finding Appellant had the financial ability to pay his court-ordered support?

B. Did the trial court err in finding Appellant in contempt for willfully violating the order to pay support?

C. Did the trial court err in finding that Appellant had, beyond a reasonable doubt based on the totality of the evidence before it, the present ability to pay a purge of $500 to avoid six months of house arrest?

Perry's Br. at 4.

We review an order holding a party in contempt for an abuse of discretion. Hyle v. Hyle, 868 A.2d 601, 604 (Pa.Super. 2005). A "court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." Id.

- 4 -

"The purpose of a civil contempt order is to coerce the contemnor to comply with a court order." Id. Punishment for contempt in support actions is governed by 23 Pa.C.S.A. § 4345, which provides that:

> (a) General rule.—A person who willfully fails to comply with any order under this chapter, except an order subject to section 4344 (relating to contempt for failure of obligor to appear), may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
>> (1) Imprisonment for a period not to exceed six months.
>>
>> (2) A fine not to exceed $1,000.
>>
>> (3) Probation for a period not to exceed one year.
>
> (b) Condition for release.—An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor.

23 Pa.C.S.A. § 4345.

To support a finding of civil contempt, "the complaining party must show, by a preponderance of the evidence, that a party violated a court order." Hyle, 868 A.2d at 604. "The alleged contemnor may then present evidence that he has the present inability to comply and make up the arrears." Id. If the alleged contemnor presents evidence that he is presently unable to comply, the court "in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to

comply." Id. at 604-05 (quoting Barrett v. Barrett, 368 A.2d 616, 621 (Pa. 1977)) (emphasis omitted).

Perry first argues the court erred in finding he had the ability to pay court-ordered support. He argues that the hearing focused on Perry's disabilities and inability to work. He maintains Domestic Relations did not present evidence that Perry had income or assets. He maintains that, even if the trial court found his testimony regarding a lack of income not credible, it had no evidence on which to base a finding that he had the ability to make payments. He further notes that the court granted him in forma pauperis status, which shows he "had very little money." Perry's Br. at 12.

The trial court concluded:

> At the Contempt Hearing, held on October 11, 2019, [Perry] presented no evidence indicating he is unable to pay his court ordered support at this time. [Perry] was aware that his Physician Verification Form on file with Domestic Relations had expired, and although [Perry] was provided an opportunity to present a current Physician Verification Form, he failed to do so. Additionally, [Perry] indicated his Social Security claim was denied. Due to the fact that [Perry] did not present evidence that he has the present inability to comply with the support order, the Court was compelled to find [Perry] was in contempt of the support order.

Trial Court Opinion, filed Dec. 12, 2019, at 3 (citations to record omitted) ("1925(a) Op.").

The court did not abuse its discretion. Perry makes no claim that he has complied with the order. Therefore, because he did not comply with the order, he had the burden to establish that he had the present inability to pay. Hyle,

868 A.2d at 604. Perry failed to provide a current physician verification form, and his social security claim had been denied. Further, he did not complete the work search programs available to him.

Perry next claims the trial court erred in finding him in contempt for willfully violating the order to pay support. He claims he participated in two work search programs, which "demonstrated effort to comply with the order." Perry's Br. at 13. He further notes that he had previously provided physician verification forms showing the state of his disability. He claims that the record does not support a finding that he has the present capacity to obtain employment.

The trial court concluded:

> A support order dated July 13, 2010, and effective May 20, [2010], was entered in the State of New Jersey. On June 4, 2018, an order of support was entered directing [Perry] to pay the sum of $515.67 per month plus $39.00 per month in arrears. At the time a Bench Warrant was issued on September 17, 2019, [Perry] owed support arrearages in the amount of $52,094.81, and had failed to appear for three (3) hearings relating to this case. In previous Orders of [the c]ourt, [Perry] was given an opportunity through the Veterans Administration to either receive appropriate treatment or to participate in the work program. However, [Perry] was dismissed from the Veterans Administration programs due to noncompliance with the requirements of the programs. For these reasons, it is [the c]ourt's position that [Perry] willfully violated the support order.

1925(a) Op. at 3-4 (citations to record omitted).

The court did not abuse its discretion in finding Perry's non-payment of support was willful. Perry failed to provide documentation establishing an inability to work, and failed to participate in the work search programs.

Perry further claims the court erred in finding he has the present ability to purge the contempt by paying $500. He claims the hearing established "[h]is lack of money, lack of employment, and lack of employability all indicated his destitute state financially." Perry's Br. at 15. He notes he was not questioned about how much money he currently had, and that the petitioner did not prove he had the current ability to pay. He notes that although the trial court in its 1925(a) opinion stated that Perry could purge the contempt by providing medical documentation, such a condition was not mentioned elsewhere.

The trial court concluded:

> The Contempt Order was fashioned in a manner so as to coerce [Perry] to comply with the Support Order. There was no intent to be punitive by imposing house arrest. House arrest was an appropriate sanction for civil contempt and is minimally invasive. Previous Contempt Orders imposing probation were unsuccessful to convince [Perry] to abide by set requirements. Through past Orders, [the c]ourt gave [Perry] the opportunity to participate in [the VA's] programs. Unfortunately, [Perry] failed to take full advantage of the opportunities presented in these programs. The next step was to provide further incentive for compliance through house arrest to rehabilitate [Perry]. If [Perry] followed the directives of [the c]ourt he could easily have met the requirements for purge.
>
> The [c]ourt permitted [Perry] to serve his sentence on house arrest so that [Perry] could again attempt to either provide documented medical forms stating that he is not

capable of working, or to participate in any type of a program to seek gainful employment. [Perry's] ability to work was not taken away by the imposition of house arrest. Based on the totality of the evidence, [the c]ourt found that [Perry] had the present ability to pay a nominal purge fee of $500.00. [Perry] was able to purge the contempt and avoid the sentence by providing medical documentation of inability to work or by paying the purge amount of $500.00. It is [the c]ourt's position that the purge conditions set forth were appropriate and attainable.

1925(a) Op. at 4-5.

The court did not abuse its discretion. The court fashioned a sentenced that allowed Perry to continue to seek employment, which would provide him with the ability to pay the $500. Further, at both the hearing and in the 1925(a) opinion, the court stated that Perry could obtain the necessary medical documents while on house arrest.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2020